**WORLD OMNI FINANCIAL CORP.,**
**Plaintiff–Appellee,**

v.

**ACE CAPITAL RE INC. and ACE Capital Re Overseas Ltd.,**
**Defendants–Appellants.**

**No. 02–9196.**

United States Court of Appeals,
Second Circuit.

May 2, 2003.

Appeal from the United States District Court for the Southern District of New York (Richard Owen, Judge).

William A. Maher, (Vincent T. Chang, Deborah E. Edelman on the briefs), Wollmuth Maher & Deutsch LLP, New York, New York for Defendants–Appellants.

John E. Heintz, (August J. Matteis, Barry I. Buchman on the briefs) Gilbert Heintz & Randolph, LLP, Washington, D.C.; Edward G. Williams, Tracy E. Makow, of counsel, Stewart, Occhipinti & Makow, New York, New York, New York for Plaintiff–Appellee.

PRESENT: STRAUB, KATZMANN, and RAGGI, Circuit Judges.

## SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

_____ At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 2nd day of May, Two Thousand and Three.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the written orders of the United States District Court for the Southern District of New York entered October 10 and October 24, 2002, as well as the court's oral order of October 18, 2002, which collectively denied the motions of defendants-appellants ACE Capital Re Inc. ("ACE") and its corporate affiliate ACE Capital Re Overseas Ltd. ("ACE Overseas")[1] to stay the contract action by plaintiff-appellee World Omni Financial Corp. ("World Omni") pending arbitration, pursuant to 9 U.S.C. § 3,[2] are hereby VACATED and REMANDED to permit the district court to determine whether the dispute at issue comes within the scope of the arbitration agreement.

1. In an effort to simplify our discussion of the complex facts underlying the parties' dispute, we will also use "ACE" to refer to Capital Re Inc., the predecessor to ACE Capital Re Inc., and "ACE Overseas" to refer to KRE Reinsurance Ltd., the predecessor to ACE Capital Re Overseas Ltd.

2. Defendants moved for dismissal on grounds other than the plaintiff's duty to arbitrate, but those issues are not before us on this interlocutory appeal.

We have jurisdiction to hear this interlocutory appeal pursuant to section 16(a) of the Federal Arbitration Act. *See* 9 U.S.C. § 16(a)(1)(A) ("An appeal may be taken from ... an order ... refusing a stay of any action under [9 U.S.C. § 3]."). We review the district court's legal conclusions *de novo* and its factual findings for clear error. *See Specht v. Netscape Communications Corp.*, 306 F.3d 17, 26 (2d Cir. 2002); *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295 (2d Cir.1999).

World Omni is a Florida corporation that provides automobile lease financing for cars sold by its parent company, JM Family Enterprises, Inc. ("JM"), through various dealerships that it owns across the southeastern United States. In 1999, World Omni sought to minimize its risk of loss on hundreds of thousands of car leases by purchasing multiple tiers of insurance. Toward that end, it approached ACE, which agreed to provide one tier of insurance through its affiliate ACE Overseas. ACE Overseas, however, was apparently not licensed to provide direct insurance coverage. To circumvent this limitation, the parties agreed to use two insurance policies and a captive insurer to effect their understanding. Specifically, World Omni's parent, JM, created a shell corporation, JCJ Insurance Company ("JCJ"), which issued World Omni a direct insurance policy covering approximately $160,000,000 of its potential lease losses.[3] In turn, ACE Overseas reinsured JCJ for 100% of its liability to World Omni. Pursuant to this two-step arrangement, World Omni paid a total premium of $26,250,000, two installments of which were paid to JCJ, which passed them on to ACE/ACE Overseas, and two installments of which

were paid directly by World Omni to ACE/ACE Overseas.

In the fall of 2001, World Omni submitted a claim for losses covered by the direct insurance and reinsurance policies. After initiating an audit of World Omni's records, ACE disputed the claim and refused payment.

In January 2002, World Omni filed the instant contract action seeking both a declaration that ACE had breached its obligations under the insurance and reinsurance policies and an award of money damages. ACE moved for an order of dismissal or summary judgment, or for a stay in favor of arbitration on the grounds that (1) ACE had no direct contractual obligations to World Omni; (2) ACE Overseas, not ACE, was the proper defendant; (3) World Omni was not a party to the reinsurance agreement (with ACE Overseas) and, therefore, could not assert rights thereunder; and (4) World Omni was, in any event, obliged to submit any dispute with ACE or ACE Overseas regarding its insurance claim to arbitration.

The last argument relied on a provision in the reinsurance agreement between ACE Overseas and JCJ, World Omni's sister corporation, that stated:

> Should an irreconcilable difference of opinion or dispute arise between the parties .to this Agreement as to the interpretation of this Agreement, or as to transactions with respect to this Agreement, such differences or dispute shall, before bringing any action or suit hereunder, first be submitted to the decision of a board of arbitration....

---

**3.** JCJ agreed to insure World Omni for 90% of its total residual lease losses greater than $423,665,329 and less than $598,115,759.

World Omni purchased additional tiers of loss insurance from other carriers.

The direct insurance agreement between World Omni and JCJ contained no such arbitration clause.

In its order entered September 10, 2002, the district court granted World Omni leave to amend its complaint to add ACE Overseas as a defendant but denied ACE's motion for dismissal or summary judgment, holding that the facts pleaded in the complaint and adduced by the parties in support or opposition to defendant's motion, when viewed in the light most favorable to World Omni, could support a finding that ACE/ACE Overseas acted as World Omni's direct insurer.[4]

ACE moved for reconsideration and, after ACE Overseas entered the case, it too moved to stay the litigation pending arbitration. The district court denied reconsideration in a written order entered October 10, 2002, and denied the new motion to compel arbitration in an oral order stated on the record on October 18, 2002, and supplemented by a written order entered October 24, 2002.

Courts employ a two-part test in determining whether claims are arbitrable: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." *ACE Capital Re Oversees Ltd. v. Central United Ins. Co.*, 307 F.3d 24, 28 (2d Cir.2002) (citation omitted).

With respect to the first part, as the district court correctly observed, arbitration is generally a creature of contract, and courts will not ordinarily require a party to arbitrate a dispute that it has not consented to arbitrate. *See Specht v. Netscape Communications Corp.*, 306 F.3d at 26; *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995). In the case of a non-signatory to an arbitration agreement, courts employ "ordinary principles of contract and agency"— specifically (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel—to determine whether the non-signatory should be bound by an arbitration agreement signed by other parties. *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d at 776 (quoting *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980)).

ACE/ACE Overseas invoke two of these principles to support their argument that World Omni should be compelled to arbitrate any claims that touch matters covered by the reinsurance agreements: (1) JCJ, which is bound by the arbitration clause in the reinsurance agreement, is World Omni's alter ego; and (2) World Omni's assertion of rights under the reinsurance agreement estops it from denying the applicability of that contract's arbitration provision.

A party that is not a signatory to a contract containing an arbitration clause is estopped from denying its obligation to arbitrate when it seeks to receive a "direct benefit" from the contract. *American Bureau of Shipping v. Tencara Shipyard*

---

**4.** In so ruling, the district court relied on *Allstate Ins. Co. v. Adminstratia Asigurarilor De Stat*, 948 F.Supp. 285, 307–09 (S.D.N.Y. 1996) (holding that where "an insured consistently deals directly with its insurer's reinsurer ... the reinsurer may become directly liable to the insured"), and *Klockner Stadler Hurter Ltd. v. Insurance Co. of Penn.*, 785 F.Supp. 1130, 1134 (S.D.N.Y.1990). *See also Klockner Stadler Hurter, Ltd. v. Insurance Co.*

*of Pa.*, 780 F.Supp. 148, 165 (S.D.N.Y.1991), (holding that reinsurer could be directly liable to an insured where the reinsurance agent was the "ultimate, consistent reimburser of losses" of the insured, and "this status was conveyed to" the insured). This court has yet to rule on the question of a reinsurer's direct liability to an insured and, because this issue is not before us on this interlocutory appeal, we do not address it now.

*S.P.A.*, 170 F.3d 349, 353 (2d Cir.1999); *see Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d at 776. Although World Omni asserts on appeal that it sues ACE/ACE Overseas only to recover the benefits of the direct insurance agreement (which contains no arbitration clause), in its original and superseding complaints, it has consistently charged defendants with also breaching the reinsurance agreement (which does contain an arbitration clause) and demanded compensatory damages under both instruments. This pleading is hardly surprising given that both the direct and reinsurance policies were necessary to achieve the desired insurance coverage. Thus, while World Omni may well be satisfied if it recovers all its losses through its direct insurance claim against ACE/ACE Overseas, in the event that claim is unsuccessful, World Omni apparently also sues as a third-party beneficiary of the reinsurance policy. To the extent World Omni pursues claims against ACE/ACE Oversees that fall within the scope of the arbitration clause contained in the reinsurance agreement, we conclude that it is estopped from denying a duty to arbitrate. *See generally ACE Capital v. Central United*, 307 F.3d at 34 (noting that if an arbitration clause is deemed broad and claims asserted "touch matters" within agreement to arbitrate, those claims are subject to arbitration). Because we conclude that World Omni is bound under this estoppel theory, we need not reach ACE's argument that World Omni is bound as the "alter ego" of JCJ.

Instead, we turn to the second factor relevant to determining arbitrability, i.e., the scope of the arbitration agreement. *See id.* at 28. As with any contractual dispute, "our main concern in deciding the scope of arbitration agreements is to faithfully reflect[ ] the reasonable expectations" of the parties. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 28 (2d Cir.1995) (citation and internal quotations omitted). Where, as in this case, the parties are all sophisticated corporate entities, no one of them should be able to gain an unfair advantage over the other by denying the reality of a bargain effected through two contracts with very different arbitration expectations. Indeed, under such circumstances, a court may properly sever those claims subject to arbitration from those adjudicable in court. *See Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir.1995).

Because in this case the district court concluded that World Omni had no duty to arbitrate under the reinsurance policy, the issue of whether the dispute or disputes contained in the present lawsuit fall within the scope of that contract's arbitration clause was never fully briefed or developed in the record below. Resolution of this point might be informed, for example, by affidavits or other evidence bearing on such matters as (1) the parties' intent with respect to arbitrable issues, and (2) the subject matter of the questions in dispute in this action. Accordingly, we VACATE and REMAND so that the able district judge handling this matter may address this issue in the first instance through proceedings consistent with this opinion.