[Cite as *Fifth Third Bank v. Senvisky*, 2014-Ohio-1233.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 100030 and 100571**

# FIFTH THIRD BANK, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# KENNETH SENVISKY, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART,
REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-766947

**BEFORE:** S. Gallagher, J., Boyle, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 27, 2014

**ATTORNEYS FOR APPELLANTS**

Christopher J. Hogan
Marion H. Little
Zeiger, Tigges & Little, L.L.P.
3500 Huntington Center
41 South High Street
Columbus, OH   43215


**ATTORNEYS FOR APPELLEES**

William Joseph Baker
Donald C. Bulea
Karen L. Giffen
Giffen & Kaminski L.L.C.
1300 East Ninth Street
Suite 1600
Cleveland, OH   44114

SEAN C. GALLAGHER, J.:

{¶1} Plaintiffs Fifth Third Bank and Fifth Third Bancorp ("Fifth Third") appeal, in appeal No. 100030, the trial court's decision granting the joint motion to compel arbitration of defendants Jason Seifert and Gregory Perram (also collectively "defendants" herein), filed in response to Fifth Third's partial motion for summary judgment upon Count 6 of Fifth Third's complaint. Defendants, in appeal No. 100571, appeal the trial court's decision denying defendants' motion to compel arbitration as to all other counts in Fifth Third's complaint. We reverse the decision of the trial court pertaining to the order compelling arbitration, affirm its decision denying defendants' motion to dismiss, and remand for further proceedings.

{¶2} Fifth Third filed a multicount complaint alleging several non-compete and related claims against several defendants, including as pertinent to the current appeals, Seifert and Perram. In Count 6 of that complaint, Fifth Third also alleged that Seifert and Perram breached the terms of forgivable loan agreements between Fifth Third and the defendants and that the full sum of the loans was due and owed. Seifert and Perram dispute any breach. In opposition to Fifth Third's motion for partial summary judgment upon that claim, defendants asserted, for the first time, a claim to compel arbitration of Count 6 pursuant to the terms of employment agreements between Fifth Third Securities ("FTS") and the defendants.

**{¶3}** In order to avoid over-complicating the fact pattern, it suffices that FTS hired the defendants and that the employment agreements ("FTS defendants' agreements") included an arbitration provision, apparently satisfying Financial Industry Regulatory Authority ("FINRA") provisions. Fifth Third, separate legal entities, then entered into dual employment agreements with Seifert and Perram for the services underlying the claims in Fifth Third's complaint. The Fifth Third employment agreements with Seifert and Perram were separate and apart from the employment agreements between the latter and FTS. Fifth Third directly paid both Seifert and Perram as employees. It is not clear from the record whether FTS also compensated Seifert and Perram as employees, although both the Fifth Third defendants' and the FTS defendants' employment contracts provide that FTS would compensate Seifert and Perram in addition to Fifth Third's payments.

**{¶4}** Defendants claim that the forgivable loan agreements were offered to settle a dispute that arose over compensation between FTS and Seifert and Perram. The defendants' respective affidavits, attached to the underlying motion to compel arbitration, are vague with respect to whether the loan agreements were in lieu of compensation owed by FTS, merely referring to the payments as originating from FTS and/or Fifth Third. The loan documents are titled as being from Fifth Third Bank, although Fifth Third is generically referred to as originating the loan under the terms of the document. Nonetheless, it is undisputed that the Fifth Third defendants' agreements contained no provision for arbitrating any disputes and FTS is not a party in the underlying litigation.

**{¶5}** Before addressing the merits of any claims, it is important to specifically consider the procedural history of this case, relying on the record provided for our review. On October 18, 2011, Fifth Third filed the complaint including a motion for a temporary restraining order ("TRO"). Seifert and Perram immediately filed a motion on October 19, 2011, the same day the court granted the TRO, captioned "Motion to Dismiss and/or Compel Arbitration and Alternatively Defendants' Memorandum in Opposition" to Fifth Third's TRO and preliminary injunction. In the substantive portion of that motion, defendants' arbitration argument was relegated to a single line in which the defendants claimed that "[a]ny action between the customer and [FTS] arising out of those [customer service securities] accounts must be brought in arbitration conducted by FINRA," pursuant to FINRA regulations. The remaining arguments in that motion dealt with the substantive claims raised in defense to Fifth Third's complaint. In a footnote, the defendants expressed the desire to file a motion to compel arbitration after they had time to review the complaint and present a formal argument in favor thereof. The defendants never filed such a motion.

**{¶6}** Instead, on November 15, 2011, defendants entered a stipulated injunctive order, valid until October 2012. In accordance with that stipulated order, on December 29, 2011, defendants filed a complete answer to Fifth Third's amended complaint, in which Seifert and Perram advanced several affirmative defenses, none of which raised the arbitration provision in their employment agreements with FTS or any other indication of an arbitration provision defining Fifth Third's relationship with Seifert and Perram.

**{¶7}** On January 5, 2012, Fifth Third filed a motion for partial summary judgment upon Count 6 of the complaint, based on the forgivable loan agreements between Fifth Third and the defendants. After numerous extensions and discovery-related motion practice, on May 20, 2013, Seifert and Perram finally filed a brief in opposition to Fifth Third's partial summary judgment motion. Defendants combined their joint brief in opposition with a "renewed" request to compel arbitration pursuant to R.C. 2711.01–.03. Seifert and Perram again sought the affirmative relief of dismissal, although limited to Count 6 of Fifth Third's complaint. Defendants based their "renewed" request on the newly developed theory that an arbitration clause in their employment agreements with FTS was binding upon Fifth Third, despite the fact that Fifth Third had separate contracts defining its relationships with the defendants and separate loan agreements, none of which contained an arbitration provision. Defendants apparently abandoned their original arbitration theory that the FINRA regulation required arbitration of any disputes involving the customers and defendants, but never sought an order compelling arbitration on any claim besides Fifth Third's Count 6 for breach of contract based on the forgivable loan agreements.

**{¶8}** On May 23, 2013, and without any briefing in opposition to the affirmative relief, the trial court granted Seifert and Perram's motion in part, compelling arbitration of Count 6. It is from this decision that Fifth Third timely appeals, in appeal No. 100030, claiming in a single assignment of error, that the trial court erred in compelling arbitration because no arbitration agreements exist between Fifth Third and the defendants. On

September 25, 2013, the trial court entered an order summarily denying defendants' motion to dismiss, filed on October 19, 2011. Defendants timely appealed the trial court's September 25, 2013 decision in appeal No. 100571, advancing a single assignment of error, claiming that the trial court erred by not compelling arbitration of all remaining claims in that September 25, 2013 order. This court sua sponte consolidated both appeals because the assigned errors are interrelated.

{¶9} Both parties framed this case as an issue of whether compelling arbitration was warranted under the applicable law, and thus our review is limited.[1] Defendants claim that the theories of alter ego, third-party beneficiary, or estoppel apply, requiring Fifth Third to arbitrate all claims. Fifth Third disagrees. Thus, Fifth Third's and the defendants' assignments of error share an inverse relationship as the issues are framed by the parties: a decision favorable to one party necessarily negates the other's assigned error. In light of this relationship, we find merit to Fifth Third's assignment of error and none with respect to the defendants'.

{¶10} Our review of decisions to compel arbitration depends on "the type of questions raised challenging the applicability of the arbitration provision." *Skerlec v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga No. 98247, 2012-Ohio-5748, ¶ 6, quoting *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261,

---

[1]Our decision, therefore, does not address any issues with regard to whether Seifert or Perram waived their right to seek an order compelling arbitration pursuant to R.C. 2711.02 (staying case pending arbitration) or 2711.03 (separate action to enforce arbitration agreement) by their delay in raising the issue with the trial court.

2012-Ohio-1543, ¶ 7. The issue of whether a party has agreed to submit an issue to arbitration is generally reviewed under a de novo standard of review. *Id.*, citing *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.); *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12.

{¶11} "Arbitration is a favored form of dispute settlement under Ohio law and federal law." *Fifth Third Bank v. Rowlette*, 10th Dist. Franklin No. 13AP-337, 2013-Ohio-5777, ¶ 7, citing *ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 500, 692 N.E.2d 574 (1998); *Preston v. Ferrer,* 552 U.S. 346, 353, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). Courts recognized, however, that arbitration is a matter of contract. *Id.* Thus, a party cannot be compelled to submit a dispute to arbitration without expressly agreeing to the arbitration terms. *Id.*, citing *Benjamin v. Pipoly,* 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, ¶ 32 (10th Dist.); *see also Harmon v. Philip Morris, Inc.*, 120 Ohio App.3d 187, 189, 697 N.E.2d 270 (8th Dist.1997); *AT&T Technologies, Inc. v. Communication Workers of Am.,* 475 U.S. 643, 648-649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit * * *"). Especially in Ohio, "there is a counter-weighing presumption against arbitration when a party seeks to invoke an arbitration provision against a nonsignatory." *Rowlette*, citing *Taylor v. Ernst & Young, L.L.P.,* 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 21. The party seeking to compel arbitration bears the burden of establishing the

existence of an enforceable arbitration agreement between the party against whom the moving party seeks enforcement.

**{¶12}** The law regarding the enforceability of arbitration clauses as to a nonsignatory is "consistent with that of ordinary contract law insofar as parties not privy to a contract may not benefit from an arbitration agreement incorporated therein." *West v. Household Life Ins. Co.*, 170 Ohio App.3d 463, 2007-Ohio-845, 867 N.E.2d 868, ¶ 14 (10th Dist.); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1113 (3d Cir.1993). It is into this context that defendants weave their argument that Fifth Third is estopped from denying the arbitration provision, or the provision should apply through the theories of alter ego or piercing the corporate veil. *See World Omni Fin. Corp. v. Ace Capital Re Inc.*, 64 Fed.Appx. 809, 812 (2d Cir.2003) (applying principles of contract and agency, such as (1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing/alter ego, and (5) estoppel, to determine whether the nonsignatory should be bound by an arbitration agreement).

**{¶13}** It is undisputed that Fifth Third is a nonsignatory to the FTS defendants' agreements, which contain the arbitration provision. Thus, it was defendants' burden to establish that Fifth Third was bound by the terms of the arbitration provision contained in the FTS defendants' agreement through estoppel or the alter ego/veil piercing theory. Defendants did not produce evidence sufficient to withstand their burden; and therefore, the limited order to compel arbitration of the claims encompassing the

forgivable loan agreements was in error.  There is no enforceable arbitration agreement between Fifth Third and the defendants.

{¶14} In *Gerig v. Kahn*, 95 Ohio St.3d 478, 2002-Ohio-2581, 769 N.E.2d 381, upon which defendants heavily rely, the Ohio Supreme Court applied the doctrine of equitable estoppel in holding that a plaintiff, in a medical malpractice action, seeking a declaration that a hospital was required to insure the physician's alleged misconduct under an agreement between the hospital and the physician, was also bound by an arbitration provision in that agreement.  The court reasoned that it would have been inequitable to allow nonsignatories to avoid the burden of arbitration while simultaneously seeking a direct benefit under the agreement.  *Id.* at ¶ 15-19.

{¶15} In this case, defendants argue that Fifth Third received the benefit of defendants' employment with FTS and therefore must accept the burden of the arbitration provision within the FTS defendants' agreements.  Defendants misconstrue the nature of the benefit described in *Gerig* and other cases following a similar estoppel approach.  Fifth Third asserted its rights under the employment agreements between it and the defendants, which did not contain an agreement to arbitrate.  For the purposes of estoppel, in order to enforce the FTS defendants' arbitration agreements against Fifth Third, the defendants must establish that Fifth Third is asserting rights directly derived from the FTS defendants' agreements. *See, e.g., id.*; *Covington v. Lucia*, 151 Ohio App.3d 409, 415, 2003-Ohio-346, 784 N.E.2d 186 (10th Dist.) (noting estoppel does not apply because the plaintiff was not asserting any rights established by the document

containing the arbitration provision); *Javitch v. First Union Secs., Inc.*, 315 F.3d 619 (6th Cir.2003) (receiver bringing claims on behalf of two business entities could be bound to arbitration agreements entered into by those entities if the claims arose from those agreements just the same as if the entities brought the claims absent the appointment); *Wealth Rescue Strategies, Inc. v. Thompson*, S.D. Tex. No. H-08-3107, 2009 U.S. Dist. LEXIS 106989 (Nov. 17, 2009) (plaintiff's damages flowed through the contract its agent had with the defendant, which contained an arbitration provision).

{¶16} Defendants cite to the fact that FTS required them to maintain their FINRA licenses pursuant to terms of their employment with FTS. Defendants claim this was for the benefit of Fifth Third because Fifth Third then hired the defendants to sell securities, which required the licensing. This misses the point. Fifth Third's claims stem from a breach of a separate non-compete agreement contained in Fifth Third's contracts with the defendants and breach of the forgivable loan agreements between Fifth Third and the defendants. Fifth Third did not assert any claims regarding the licensing or registrations, or that defendants otherwise breached any other terms under the FTS defendants' agreements. *Lucia* at ¶ 22. The estoppel cases are simply inapplicable. Instead, Fifth Third asserted claims pursuant to the contractual agreements it separately entered with the defendants, separate and apart from the agreements defendants entered with FTS.

{¶17} With regard to defendants' assertion that the forgivable loan agreements dealt with a compensation dispute between defendants and FTS, undisputedly within the gravamen of the FTS defendants' arbitration agreements, there is no evidence in the

record that the forgivable loan agreements were in lieu of compensation owed by FTS. Defendants' evidence supporting their claim that the forgivable loan agreements were in lieu of direct compensation owed by FTS was limited to (1) their individual affidavits merely indicating the forgivable loan agreements originated from FTS and/or Fifth Third, (2) copies of defendants' pay stubs reflecting the loan agreements, and (3) copies of emails from Fifth Third Private Bank representatives discussing the loan agreements.

{¶18} Fifth Third claims, as indicated by the title of the document and the fact that FTS was not a party to the lawsuit, that the loans originated from Fifth Third. There was no other evidence in the record establishing that the loan agreements were compensation for services rendered to FTS, rather than for services rendered under the defendants' employment agreements with Fifth Third directly.

{¶19} Seifert's and Perram's affidavits vaguely reference whether FTS initiated the forgivable loan agreements. In both their affidavits, the defendants claim the loans originated from FTS and/or Fifth Third. In other words, the defendants are unsure which entity originated the loans. The issue becomes less clear in consideration of the fact that the copies defendants' produced of their pay stubs fail to reflect which Fifth Third entity claimed the payments as compensation. It is undisputed that they were salaried employees of Fifth Third.

{¶20} The pay stubs defendants introduced only included the employer identification number, with no evidence establishing which entity belonged to that

identification number. Moreover, defendants failed to indicate, or demonstrate with evidentiary submissions, how the emails discussing the loans from employees of Fifth Third Private Bank to the defendants established a connection to FTS. In short, defendants bore the burden of demonstrating the enforceability of the arbitration provision in the FTS defendants' agreements against Fifth Third, and the absence of evidence tying the loan agreements to FTS was dispositive. Relying on our de novo review of the undisputed evidence presented to the trial court, we find no merit to defendants' argument that the arbitration provisions in the FTS defendants' agreements are enforceable against the nonsignatory Fifth Third pursuant to the doctrine of estoppel. Fifth Third is not seeking enforcement of the FTS defendants' agreements, nor have the defendants established that the forgivable loan agreements were based on a salary dispute between them and FTS.

{¶21} Finally, and in the alternative, defendants argue that the arbitration provision in the FTS defendants' agreements should be enforceable against Fifth Third on the basis that Fifth Third was an alter ego of FTS, or that the corporate veil should be pierced to impute the contractual terms of FTS's agreement against Fifth Third.[2]

---

[2]Defendants also claim on appeal that Fifth Third was a third-party beneficiary of the FTS defendants' agreements or that Fifth Third perpetuated a fraud by depriving them of their contractual right to arbitrate disputes. "Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed." *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81, 679 N.E.2d 706 (1997), citing *Goldberg v. Indus. Comm.*, 131 Ohio St. 399, 404, 3 N.E.2d 364 (1936). Accordingly, we cannot address defendants' third-party beneficiary claim or fraud allegations because they failed to raise these issues in front of the trial court. Defendants' motion to compel arbitration on Count 6, combined with their brief in opposition to Fifth Third's motion for summary judgment on the same, was limited to the estoppel and alter ego theories. We

**{¶22}** "Generally, a parent and subsidiary are separate and distinct legal entities." *Mut. Holding Co. v. Limbach*, 71 Ohio St.3d 59, 60, 641 N.E.2d 1080 (1994), citing *Hoover Universal, Inc. v. Limbach*, 61 Ohio St.3d 563, 575 N.E.2d 811 (1991). In certain situations, however, courts will look beyond the pro forma separation of entities. In Ohio,

> [t]he corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 275, 617 N.E.2d 1075 (1993), paragraph three of the syllabus.

**{¶23}** Defendants, in this case, seek application of the "'more relaxed, less exacting' application of the alter-ego doctrine applied '[i]n order to effectuate federal labor policies.'" *Rd. Sprinkler Fitters Local Union No. 669 U.A., AFL-CIO v. Dorn*

---

note that the trial court's September 25, 2013 order denying defendants' motion to dismiss falls under this same category. Defendants' motion to dismiss did not include any claims for alter ego/piercing the veil or estoppel. However, because that issue inherently intertwined with the issues raised by Fifth Third on appeal, we combined them for the sake of simplicity.

*Sprinkler Co.*, 669 F.3d 790, 794 (6th Cir.2012), citing *NLRB v. Fullerton Transfer & Storage Ltd.*, 910 F.2d 331, 337 (6th Cir.1990). In the relaxed version, when two companies are engaged in the same business and marketplace, courts must determine "'whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership' to decide whether one is the alter ego of the other." *Id.*, quoting *Fullerton*. We need not decide which standard applies. Under either, defendants failed to satisfy their burden of demonstrating that Fifth Third exercised control that was so complete as to render FTS as having no separate control over itself.

{¶24} It is undisputed that Fifth Third cannot participate in the same market as FTS. As all parties make clear, FTS is registered with FINRA and only FTS employees may offer securities products to customers. Defendants, in order to establish Fifth Third's dominion and control over FTS, referred to the dual service agreements between Fifth Third and the defendants. The agreements, however, indicate that Fifth Third may independently terminate the defendants' employment, irrespective of FTS's decisions. Further, both employment agreements, FTS defendants' and Fifth Third's dual employment agreements, indicate that each respective entity would compensate defendants separately.

{¶25} The only other evidence submitted on this issue was the fact that certain members of FTS's management were also employed by Fifth Third through dual employment agreements and that FTS was a wholly owned subsidiary of Fifth

Third. Neither of those submissions, however, is sufficient to demonstrate the type of control necessary to satisfy the defendants' burden in seeking enforcement of an arbitration provision against a nonsignatory, parent corporation — it merely bolsters the undisputed fact that FTS is a wholly owned subsidiary of Fifth Third and Fifth Third independently hires FTS employees in a dual employment structure.

{¶26} Accordingly, there is some evidence to establish FTS's autonomy from Fifth Third's actions, but no evidence that Fifth Third controls FTS's decisions to such a degree, if any, to establish the dominion and control sufficient to disregard the corporate identities of Fifth Third and FTS. Upon the record presented for this appeal, defendants failed to produce sufficient evidence to overcome the presumption that a wholly owned subsidiary entity is a separate entity from the parent corporation. *Rowlette*, 10th Dist. Franklin No. 13AP-337, 2013-Ohio-5777, ¶ 10 (finding in a similar context that Fifth Third and FTS are sufficiently separate and distinct entities).[3] The fact that Fifth Third and FTS share management-level employees does not alone justify piercing the corporate veil or determining that Fifth Third is an alter ego of FTS. *Bacoccini v. Ice Industries, Inc.*, 6th Dist. Lucas No. L-08-1401, 2009-Ohio-3800, ¶ 23.

---

[3]Defendants' argument that Fifth Third's decision to omit FTS as a party in the pleadings was a litigation-related, tactical decision to limit the impact of the defendants' agreement to arbitrate with FTS is misplaced. First, the omission demonstrates the separateness of Fifth Third from FTS, but more important, it is irrelevant whether FTS is a party to the current litigation. Even if FTS were a party, the impact of the arbitration agreement would apply only against FTS unless the nonsignatory Fifth Third were bound through some equitable principle as addressed in the current appeal. Simply including FTS as a party would not alter the need to determine whether FTS's agreement to arbitrate is enforceable against Fifth Third for the purposes of compelling arbitration.

**{¶27}** Defendants' sole assignment of error is overruled, and Fifth Third's sole assignment of error is sustained. The trial court erred in compelling arbitration on Count 6 of Fifth Third's complaint, the claims based on the forgivable loan agreement. The arbitration provision contained within the employment agreements between FTS and the defendants is not enforceable against Fifth Third based on the claims advanced in the complaint.

**{¶28}** We, therefore, affirm in part, reverse in part, and remand for further proceedings consistent herein.

It is ordered that appellants and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
EILEEN T. GALLAGHER, J., CONCUR