[Cite as *Gibbs v. Firefighters Community Credit Union*, 2021-Ohio-2679.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

RICHARD GIBBS, ET AL.,              :

    Plaintiffs-Appellees,          :

                                          No. 109929

    v.                             :

FIREFIGHTERS COMMUNITY            :
CREDIT UNION,

    Defendant-Appellant.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 5, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-927066

---

### *Appearances:*

Branstetter, Stranch & Jennings, P.L.L.C., Alyson Steele
Beridon, Karla Campbell, Michael J. Wall, J. Gerard
Stranch, and Martin F. Schubert; Cohen & Malad, L.L.P.,
and Lynn A. Toops, *for appellees.*

Litchfield Cavo, L.L.P., James Branit, and Keith L. Gibson;
Bricker & Eckler, L.L.P., and Daniel C. Gibson, *for
appellant.*

SEAN C. GALLAGHER, P.J.:

**{¶ 1}** Defendant-appellant Firefighters Community Credit Union ("FFCCU") appeals the decision of the trial court that denied its motion to stay the action pending arbitration. Upon review, we affirm the decision of the trial court.

**Background**

**{¶ 2}** On December 26, 2019, appellees Richard Gibbs, Randall L. Joy, and Donna M. Joy (collectively "appellees") filed a class-action complaint against FFCCU. The complaint states that appellees have checking accounts at FFCCU and alleges that FFCCU engages in practices of (1) charging ATM/VCC fees on transactions that do not actually overdraw an account, and (2) charging two or more returned item fees on the same item. The complaint includes class allegations and raises claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.

**{¶ 3}** In response to the complaint, FFCCU filed a motion to dismiss or, in the alternative, application for stay pending arbitration pursuant to R.C. 2711.02(B). FFCCU argued that appellees agreed to a change in terms and conditions to their account agreements, which adopted an "Arbitration and Waiver of Class Action Relief provision." FFCCU provided an affidavit of an authorized representative who averred that "[o]ne amendment to the Account Agreement that [FFCCU] notified the members of was the inclusion of an arbitration and class action waiver provision, effective August 21, 2019." It was also averred that this notice was sent to email addresses previously provided by appellees to FFCCU and that no failure to deliver

notices were received. FFCCU maintained that because appellees never opted out of the Arbitration and Waiver of Class Action Relief provision, it became effective and controls in this matter. Relevant hereto, the Account Agreement provided that it "may be amended by Us at any time in which case We will provide You with a notice of amendment as required by law or regulation," and that the "Agreements and Disclosures provided to You at the time you opened Your Account * * * may be amended by Us from time to time in a manner as prescribed by law."

{¶ 4} The email that purportedly was sent to appellees on August 28, 2019, contained the subject "We've updated our terms of services" and stated as follows:

> Dear Valued Member,
>
> We're writing to let you know that *we've updated our terms of service. These updates apply to all members* and accounts at Firefighters Community Credit Union. We believe these updates will help us serve all of our members better. *The changes in terms are attached to this email.* We recommend that you familiarize yourself with these updated agreements. *As you continue to use FFCCU for your banking needs, you agree to these updated terms.* If you have any questions, please don't hesitate to contact us at * * *. We look forward to continuing to serve you and to help you meet your financial goals.

(Emphasis added.)

{¶ 5} This email indicated that the terms of service had been updated, and nothing in the content of the email informed the recipient of the addition of the Arbitration and Waiver of Class Action Relief provision or the ability to opt out. Rather, the Notice of Change in Terms that was stated to "apply to all members" was "attached to this email." The attached Notice of Change in Terms included the

Arbitration and Waiver of Class Action Relief provision and opt-out requirements, which were shown in a box.

{¶ 6} In opposing FFCCU's motion, appellees argued in part that they "did not agree to the arbitration or waiver clauses because [they] * * * were not fully informed * * *." Appellees alleged in their opposition that the parties had been engaged in presuit settlement discussions on a class-wide basis for months leading up to the filing of the case and that the August 28, 2019 email informing members of changes to the terms of service was sent after counsel for the Joys sent a presuit demand letter on July 17, 2019. Appellees argued that because they did not make an informed decision, there was no meeting of the minds and no agreement to arbitrate or waiver of their right to participate in a class-action lawsuit or to a jury trial. They maintained that their claims were governed by the 2018 account agreement and that they are not subject to the added provisions under the 2019 agreement. Appellees also argued that at the time the notice was sent, FFCCU was already aware of the claim against it and that the Joys were represented by class counsel. Additionally, they argued that the added arbitration and class or jury waiver clauses were unconscionable.

{¶ 7} In its reply, FFCCU argued that the opposition included no admissible evidence and that appellees did not dispute receiving the notice that was sent or their failure to opt out of the arbitration requirement. FFCCU continued to maintain that the 2019 agreement and its arbitration and waiver provisions applied in this matter.

FFCCU further argued that appellees failed to establish procedural or substantive unconscionability.

{¶ 8} Following a hearing on FFCCU's motion, the trial court issued a decision that denied the motion and found "plaintiffs' claims may proceed as the arbitration clause in issue is not enforceable against them." The trial court recognized the circumstances under which the change to the terms of service was sent, including the active negotiations between the parties, and determined that "there was no agreement to arbitrate because plaintiffs could not have made an informed decision as to whether or not to opt out of the arbitration clause under these factual circumstances." The trial court specifically recognized that the "notice of arbitration and class waiver provisions must be clear so that the parties can make an informed decision" and that "the language used by defendants in the notice email implied that all members already agreed to the updated terms." In this regard, the trial court determined as follows:

> Further, the language used by defendant in the notice email implies that all members have already agreed to the updated terms. Defendant's notice e-mail dated August 28, 2019 indicated that the terms had already been updated and that members should familiarize themselves with the updated terms because by continuing to use defendant's services, members had actually already agreed to the terms. (See Def. Mem. Ex. 2. at 1. e-mail entitled "We've updated our terms of service," stating that "we recommend that you familiarize yourself with these updated agreements" and "As you continue to use FFCCU for your banking needs, you agree to these updated terms.").

{¶ 9} The trial court concluded that "there was no agreement to arbitrate" and denied FFCCU's motion. This appeal followed.

**Law and Analysis**

{¶ 10} Under its sole assignment of error, FFCCU claims the trial court erred by denying its motion to dismiss.

{¶ 11} Initially, we address appellees' contention that there is a lack of a final appealable order because the trial court denied FFCCU's motion to dismiss. Although FFCCU styled its motion as a motion to dismiss, it requested in the alternative that the case be stayed pending arbitration pursuant to R.C. 2711.02(B). The trial court ultimately determined that the case was not subject to arbitration because there was no agreement to arbitrate. Pursuant to R.C. 2711.02(C), "an order under [R.C. 2711.02(B)] that grants or denies a stay of a trial of any action pending arbitration * * * is a final order * * *." Accordingly, "Ohio law authorizes appellate review of such orders." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 30.

{¶ 12} R.C. 2711.02(B) requires a trial court to stay litigation pending arbitration when certain conditions are met and provides as follows:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 13} The standard of review for a trial court's decision on whether to stay a case pending arbitration under R.C. 2711.02(B) depends on the underlying issue

presented. *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7. Generally, an abuse-of-discretion standard has been applied when there is a question such as whether a party has waived its right to arbitrate a given dispute, and a de novo standard has been applied when reviewing whether a party has agreed to arbitration or questions of unconscionability. *Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200, 19 N.E.3d 957, ¶ 9 (8th Dist.), citing *McCaskey* at ¶ 7-8. "The existence of a contract is a question of law that we review de novo." *Vogel v. Albi*, 1st Dist. Hamilton No. C-190746, 2020-Ohio-5242, ¶ 21, citing *N. Side Bank & Trust Co. v. Trinity Aviation, L.L.C.*, 1st Dist. Hamilton Nos. C-190021 and C-190023, 2020-Ohio-1470, ¶ 17. Accordingly, because we are reviewing the trial court's determination that there was no agreement to arbitrate, we apply a de novo standard of review. *See Hedeen* at ¶ 9. However, any factual findings regarding the circumstances surrounding the making of the contract should be reviewed with great deference. *See Benfield* at ¶ 38.

{¶ 14} Whether a party has agreed to arbitration is a matter of contract. *Maestle v. Best Buy Co.*, 8th Dist. Cuyahoga No. 79827, 2005-Ohio-4120, ¶ 10, citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Palumbo v. Select Mgt. Holdings, Inc.*, 8th Dist. Cuyahoga No. 82900, 2003-Ohio-6045, ¶ 18. Therefore, when deciding whether a party has agreed to arbitrate, courts should apply ordinary principles that govern the formation of contracts. *Seyfried v. O'Brien*, 2017-Ohio-286, 81 N.E.3d 961, ¶ 19 (8th Dist.), citing *First Options* at 944; *Roberts v. KND Dev. 51, L.L.C.*, 8th Dist.

Cuyahoga No. 108473, 2020-Ohio-4986, ¶ 10, citing *Avery v. Academy Invests., L.L.C.*, 8th Dist. Cuyahoga No. 107550, 2019-Ohio-3509, ¶ 9. "'A valid arbitration agreement, like any contract, requires an offer and acceptance that is supported by consideration and is premised on the parties' meeting of the minds as to the essential terms of the agreement.'" *Rousseau v. Setjo, L.L.C.*, 8th Dist. Cuyahoga No. 109237, 2020-Ohio-5002, ¶ 8, quoting *Corl v. Thomas & King*, 10th Dist. Franklin No. 05AP-1128, 2006-Ohio-2956, ¶ 8. A party with a unilateral right to modify a contract does not have the right to make any kind of change whatsoever. *Maestle* at ¶ 20.

{¶ 15} Although Ohio courts recognize a strong public policy favoring arbitration, when deciding motions to compel arbitration, the proper focus is whether the parties actually agreed to arbitrate the issue. *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20. Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he or she has not agreed so to submit. *See id.* at ¶ 20; *Maestle* at ¶ 10, 22. "'The party seeking to compel arbitration bears the burden of establishing the existence of an enforceable arbitration agreement [with] the party against whom the moving party seeks enforcement.'" *Dorgham v. Woods Cove III*, 8th Dist. Cuyahoga No. 106838, 2018-Ohio-4876, ¶ 16, quoting *Fifth Third Bank v. Senvisky*, 8th Dist. Cuyahoga No. 100030, 2014-Ohio-1233, ¶ 11.

{¶ 16} In this action, FFCCU sought to amend the agreement with its customers to add an Arbitration and Waiver of Class Action Relief provision.

However, the record fails to demonstrate sufficient notice was sent such that there was a "meeting of the minds" or an agreement as to the inclusion of the subject provision. There is nothing to show that an arbitration provision was included in the original account agreement, and the content of the email notice that was purportedly sent to appellees did not provide any indication that the changes to the account agreement involved the addition of the Arbitration and Waiver of Class Action Relief provision. As stated by the Sixth Circuit in *Sevier Cty. Schools Fed. Credit Union v. Branch Banking & Trust Co.*, 990 F.3d 470, 15 (6th Cir.2021),

> The proper question is whether, upon assenting to the original two-page * * * agreement, such individuals * * * would reasonably expect their relationship to be governed * * * by new provisions unilaterally added * * * to such an extent that the [Bank Services Agreement] ultimately contained terms that materially changed the Plaintiffs' rights and obligations under the original agreement.

{¶ 17} Despite the fact that the email notice indicated that "[t]he changes in terms are attached to this email," as the trial court aptly recognized, the language used by the defendants in the email implied that all members had already agreed to the updated terms. Likewise, the email notice stated as the subject, "We've updated our terms of services," and the email did not call attention to the arbitration provision or opt-out requirements. Simply put, clear notice was not provided for appellees to make an informed decision or to demonstrate they agreed to be bound by the arbitration provision. Instead, "[t]he Plaintiffs were thus lulled into not giving a thought to the unilateral addition of the arbitration provision * * *." *Id.* at 24.

{¶ 18} Although FFCCU spends much time arguing that appellees failed to present admissible evidence to rebut their claim that proper notice of the provision and opt-out requirements was provided, FFCCU had the burden of establishing sufficient notice was sent and to establish the existence of an enforceable arbitration agreement. FFCCU failed to meet its burden.[1] Additionally, this case is distinguishable from *AT&T Mobility Servs., L.L.C. v. Boyd*, N.D.Ohio No. 1:19cv2539, 2020 U.S. Dist. LEXIS 196141 (Oct. 22, 2020), which is relied on by FFCCU. In stark contrast to this case, in *Boyd*, the email notice included a subject line, "Action Required: Notice Regarding Arbitration Agreement," and specifically informed the recipient that the "Arbitration Agreement [is] linked to this email" and included instruction for opting out in the content of the email. *Id.* at 4-5.[2]

{¶ 19} We also are not persuaded by the supplemental authority filed by FFCCU, which cites *Qualls v. Wright Patt Credit Union*, 2d Dist. Greene No. 2020-CA-48, 2021-Ohio-2055, and *Rudolph v. Wright Patt Credit Union*, 2d Dist. Greene No. 2020-CA-50, 2021-Ohio-2215.

---

[1] We would be remiss not to point out that as was the case in *Sevier*, the circumstances argued in this case present "the antithesis of good faith and fair dealing." *Id.* In light of the representation that active negotiations were occurring between the parties at the time the email notification was sent, FFCCU arguably had knowledge that appellees would have opted out of the provision had proper notice been given.

[2] *Joseph v. M.B.N.A. Am. Bank, N.A.*, 148 Ohio App.3d 660, 2002-Ohio-4090, 775 N.E.2d 550 (8th Dist.), is also distinguishable because it applied Delaware law, which expressly permits banks to amend credit card agreements to add an arbitration clause pursuant to Del.Code Ann., Title 5, Section 952(a), and proper notice of intent to amend the credit card agreement to incorporate an arbitration provision was sent in a mailing to card holders. *Id.* at ¶ 2, 9, 12.

**{¶ 20}** In *Qualls,* the version of the membership agreement that was attached to the complaint included the disputed arbitration clause, which had been unilaterally added to the agreement by the credit union. The Second District Court of Appeals determined that Qualls "acknowledged in his complaint that his and [the credit union's] contractual relationship was embodied in that Membership Agreement and 'related documentation.'" *Id.* at ¶ 86. The credit union, which had reserved the right to change the terms of the agreement at any time, had posted new versions of the agreement to its website and also asserted "it had mailed the July 2019 Membership Agreement to * * * the same mailing address Qualls had provided to [the credit union] as his mailing address." *Id.* at ¶ 10. The court found "Qualls manifested his assent to the arbitration provision" by "continuing to maintain his account * * * [and] by his continued use online banking." *Id.* at ¶ 88. The *Qualls* opinion contains little if any constructive legal analysis regarding notice of a unilateral modification of an agreement to include an arbitration clause. Also, unlike *Qualls*, in this case there was no physical mailing of the modified agreement and appellees did not acknowledge the 2019 agreement was applicable in filing their claims. Rather, appellees assert their claims are governed by the 2018 account agreement, which is attached to the complaint, and maintain they are not subject to the 2019 agreement containing the Arbitration and Waiver of Class Action Relief provision that was unilaterally added by FFCCU without proper notice.

**{¶ 21}** In *Rudolph*, the Second District Court of Appeals upheld a trial court's decision to enter a stay pending arbitration upon finding that the credit union could

make a unilateral change to a membership agreement to change the prior method of dispute resolution to arbitration and that Rudolph had notice of changes to the agreement because he had registered for online banking and accepted responsibility to review the member agreements that the credit union posted on its website. *See id.* at ¶ 49. Additionally, the court found "the terms were sufficiently conspicuous on the website, which Rudolph repeatedly accessed." *Id.* at ¶ 57. The decision in *Rudolph* attempts to distinguish *Maestle*, 8th Dist. Cuyahoga No. 79827, 2005-Ohio-4120, and *Sevier*, 990 F.3d 470. *Rudolph* is not controlling to our decision.

{¶ 22} Under the circumstances presented, we find the decision in *Coleman v. Alaska USA Fed. Credit Union*, D.Alaska No. 3:19-cv-0229-HRH, 2020 U.S. Dist. LEXIS 3301 (Jan. 9, 2020), to be persuasive in this matter:

> In order for plaintiff to have been bound by the terms of the arbitration agreement, there must be some evidence that shows "that a reasonably prudent user would have been on inquiry notice that [an arbitration] agreement existed." [*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 569, (9th Cir.2014)]. "While failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract, the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir.2014) (internal citation omitted). As the Seventh Circuit has explained, "we cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.)." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir.2016). *Here, defendant's pop notice made no mention of the specific changes being made to the Account Agreement. The notice failed to describe the update or call attention to the new arbitration provision. Such notice is insufficient to put a member on inquiry notice that an arbitration agreement was being added to its contract with defendant.* Requiring such notice is not "[a]n arbitration-specific rule [that] would be preempted by the FAA," *O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087, 1093 (9th

Cir.2018), as defendant argues. It is a necessary requirement for a binding contract.

(Emphasis added.) *Coleman* at 13-15.

{¶ 23} On the record before us, FFCCU cannot show that appellees clearly agreed to the Arbitration and Waiver of Class Action Relief provision. Without sufficient notice, there was no meeting of the minds and no binding agreement to arbitrate. As the Supreme Court of Ohio has held, a party cannot be forced to arbitrate a dispute that he or she did not agree to arbitrate. *Taylor*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, at ¶ 20. Therefore, we find no error in the trial court's denial of FFCCU's motion for stay pending arbitration pursuant to R.C. 2711.02(B).

{¶ 24} Finally, contrary to FFCCU's argument, we do not find that the trial court extended its ruling to all FFCCU members because class-action issues and class certification had yet to be determined. Also, the trial court did not suggest the arbitration provision was unconscionable; rather, it found no arbitration agreement existed. We find no merit to any other arguments raised by appellant that are not specifically addressed herein. The assignment of error is overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EILEEN T. GALLAGHER, J., CONCUR