[Cite as *Roberts v. KND Dev. 51, L.L.C.*, 2020-Ohio-4986.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

MARY ROBERTS,                               :

   Plaintiff-Appellant,                  :            No. 108473

v.                                          :

KND DEVELOPMENT 51, L.L.C., ET AL.,  :

   Defendants-Appellees.                 :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 22, 2020

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-18-895624

---

### *Appearances:*

The Dickson Firm, L.L.C., Blake A. Dickson, Danielle M. Chaffin, and Tristan R. Serri, *for appellant.*

Bonezzi, Switzer, Polito, & Hupp Co., L.P.A., Paul W. McCartney, Diane L. Feigi, and Christopher F. Mars, *for appellees.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Plaintiff-appellant Mary Roberts ("Roberts") appeals the trial court's decision to grant defendants-appellees, KND Development 51, L.L.C., Kindred Transitional Care and Rehab — Stratford, Kindred Nursing & Rehab — Stratford,

Kindred Healthcare Operating, Inc., Kindred Healthcare, Inc., and Amanda Eberhart's (collectively referred to as "Kindred") motion to stay pending arbitration. Finding the arbitration agreement enforceable, we affirm.

{¶ 2} In March 2016, Roberts was admitted to one of Kindred's nursing homes. She was labeled a fall risk and a care plan was established to prevent falls. Under the care plan, a mechanical Hoyer lift was required to transfer Roberts and she required at least two attendants to assist with lifts and transfers.

{¶ 3} On January 29, 2017, Roberts and Kindred entered into an alternative dispute resolution agreement ("arbitration agreement" or "Agreement"), which provided, in part:

> B. **Scope of ADR**. Any and all claims or controversies arising out of or in any way relating to this Agreement or the Resident's stay at the Facility * * * shall be submitted to alternative dispute resolution as described in this Agreement. This Agreement includes claims against the Facility, its employees, agents, officers, directors, any parent, subsidiary or affiliate of the Facility, and/or its medical director.

{¶ 4} In February 2017, Roberts was transferred to a Kindred assisted living unit. Roberts alleged that she should have not been transferred to the assisted living unit because one of the requirements was that she require the assistance of only one person to lift her and, at all times, she remained a two-person lift assist. Two months later, in April 2017, Roberts complained during a visit with her daughter that she could not move her legs because she had been dropped from a Hoyer lift. Roberts was taken to the emergency room and was diagnosed with a broken femur in both of her legs.

{¶ 5} Roberts filed suit against Kindred for her injuries in April 2018. Kindred answered the complaint, requested a jury trial and asserted as an affirmative defense that the claims are subject to "Arbitration Agreements (attached as Exhibit A), pursuant to R.C. §2711.02 and, thus, this matter should be stayed." Roberts served discovery and a deposition notice that was opposed by Kindred. Kindred requested a stay pending submission of a Civ.R. 10 affidavit of merit. In the alternative, Kindred requested to limit discovery to the issue of whether a valid arbitration agreement existed between the parties. Kindred also requested a protective order to preclude depositions until Roberts filed her Civ.R. 10 affidavit of merit and the court determined the validity of the arbitration agreement.

{¶ 6} In August 2018, Roberts filed affidavits of merit pursuant to Civ.R. 10, averring that the injuries were proximately caused by the Hoyer lift fall. Kindred moved to stay the proceedings and enforce the arbitration agreement pursuant to R.C. 2711.02. The trial court held the ruling in abeyance pending attempts by the parties to mediate the case.

{¶ 7} In February 2019, Kindred filed a renewed motion to stay and enforce the arbitration agreement. According to Kindred, the parties had not been able to schedule mediation and Roberts's continued attempts to conduct discovery were in contravention of the arbitration agreement. Roberts argued that Kindred refused to mediate.

{¶ 8} In March 2019, the trial court granted Kindred's motion and issued the following order:

Defendants' renewed motion to stay the proceedings and enforce the alternative dispute resolution agreement, filed 02/20/2019, is granted. Pursuant to the alternative dispute resolution agreement, attached as exhibit A to defendants' motion to stay, filed 10/17/2018, and R.C. 2711.02(B), case is stayed for arbitration in accordance with the alternative dispute resolution agreement, and removed from the court's active docket. Case may be returned to the pending docket only upon completion of arbitration and by motion.

Roberts filed a timely notice of appeal and raises one assignment of error for our review:

I. The trial court erred in permanently staying this case and forcing it to binding arbitration.

{¶ 9} In her sole assignment of error, Roberts contends that the trial court erred in granting Kindred's motion to stay the case and forcing the parties into binding arbitration.

**Standard of Review**

{¶ 10} "This court reviews a trial court's decision to grant a motion to stay pending arbitration for an abuse of discretion." *Avery v. Academy Invests., L.L.C.*, 8th Dist. Cuyahoga No. 107550, 2019-Ohio-3509, ¶ 9, citing *McCaskey v. Sanford-Brown College,* 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7. Regarding questions of whether an arbitration agreement is unconscionable, however, we review them under a de novo standard of review. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12. Moreover, to determine "whether a party has agreed to arbitrate, we apply ordinary principles of contract formation." *Avery* at ¶ 9, citing *Seyfried v. O'Brien*, 2017-Ohio-286, 81 N.E.3d 961, ¶ 18 (8th Dist.), and *Palumbo v. Select Mgt. Holdings, Inc.,* 8th Dist.

Cuyahoga No. 82900, 2003-Ohio-6045, ¶ 18 ("The question whether the parties agreed to arbitrate their dispute is * * * a matter of contract. The terms of a contract are a question of fact.").

**R.C. 2711.02 Motion to Stay**

{¶ 11} "When a party requests a stay under [R.C. 2711.02], the first issue before the trial court is whether there is a valid written agreement to arbitrate." *Reedy v. The Cincinnati Bengals, Inc.*, 143 Ohio App.3d 516, 520, 758 N.E.2d 678 (1st Dist.2001). "Courts apply state contract law to determine whether a binding agreement to arbitrate exists." *Maestle v. Best Buy Co.*, 8th Dist. Cuyahoga No. 79827, 2005-Ohio-4120, ¶ 10.

{¶ 12} R.C. 2711.01(A) provides:

> (A) A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.

**Analysis**

{¶ 13} Within her assignment of error, Roberts contends: (1) the Agreement is unenforceable because it was not properly executed. Specifically, the named Kindred defendants did not execute the Agreement; (2) the Agreement is void under Ohio law; (3) the Agreement is procedurally and substantively unconscionable; and

(4) Kindred waived its right to arbitration by acting inconsistently with its alleged right to arbitrate.

### 1. Parties to the Agreement

{¶ 14} Roberts contends that the Agreement cannot be enforced because the document was not properly executed and none of the named defendants were named in, or signed, the Agreement.

{¶ 15} Agreements to arbitrate are matters of contract; therefore, a person who was not a party to an arbitration agreement cannot be forced to arbitrate, or benefit from the agreement. *N. Park Retirement Community Ctr., Inc. v. Sovran Cos.*, 8th Dist. Cuyahoga No. 96376, 2011-Ohio-5179, ¶ 17, citing *Cleveland-Akron-Canton Advertising Coop. v. Physician's Weight Loss Ctrs. of Am., Inc.*, 184 Ohio App.3d 805, 2009-Ohio-5699, 922 N.E.2d 1012, ¶ 14 (8th Dist.). "Nonetheless, in some circumstances non-signatories to contracts can be contractually bound by ordinary contract and agency principles." *Id.*

{¶ 16} The Agreement is one of many documents between Kindred and Roberts. The Agreement is titled: "Alternative Dispute Resolution Agreement between Resident and Facility (Optional)." It states:

<u>ALTERNATIVE DISPUTE RESOLUTION AGREEMENT</u>
<u>BETWEEN RESIDENT AND FACILITY (OPTIONAL)</u>

This Alternative Dispute Resolution Agreement ("Agreement") is made and entered into this day of _January 29_____, 20 1 7 by and between <u>0875 - Kindred Transitional Care And Rehabilitation-</u> <u>Stratford,</u> ("Facility"), <u>Mary G Roberts</u>, ("Resident"), and _____ ("Legal Representative"). The term "Resident" includes the Resident, his/ her Guardian or Attorney in Fact, or any person whose claim is derived through or on behalf of the Resident.

The parties wish to work together to resolve any disputes in a timely fashion and in a manner that minimizes both of their legal costs. Therefore, in consideration of the mutual promises contained in this Agreement, the Resident and Facility hereby agree as follows:

* * *

**IN WITNESS WHEREOF,** the parties, intending to be legally bound, have signed this Agreement as of the date first above written.

<u>Mary G Roberts</u>
<u>Stratford</u>
*Name of Resident*

<u>0875 Kindred Transitional Care And Rehabilitation-</u>

*Facility Name & Number*

_____/_____
*Signature of Resident/Date*

If signed by a Legal Representative, the representative certifies that the Facility may reasonably rely upon the validity and authority of the representative's signature based upon actual, implied or apparent authority to execute this Agreement as granted by the resident.

<u>Mary G Roberts,</u>
*Legal Representative Printed Name & Authority Title*
*For mary Roberts*
*Phyllis Burks* 02/01/17
*Signature of Legal Representative/Date*

*ERICA YAN - Admissions Coordin*
*Facility's Authorized Agent Printed Name &*

*Ericayan* ,02/01/17
*Signature of Facility's Authorized Agent/Date*

{¶ 17} Roberts did not sign the Agreement, rather her daughter, Phyllis Burks, signed on her behalf as her legal representative. An admissions coordinator for Kindred Transitional Care and Rehab — Stratford, Erica Yan, signed as the facility's authorized agent. Roberts does not dispute that her daughter, who had

durable power of attorney over her, was her proper legal representative and authorized to sign the Agreement on behalf of Roberts.

{¶ 18} Roberts argues that the Agreement is unenforceable because it does not name the defendants as parties nor was it signed by the defendants. The entity identified in the Agreement above the signature line for the "Facility Name & Number" is "0875 — Kindred Transitional Care and Rehab — Stratford." Roberts contends that "0875 — Kindred Transitional Care and Rehab — Stratford" does not encompass the named defendants. We find this claim to be without merit. Roberts's complaint expressly alleged that "Kindred Transitional Care and Rehab — Stratford" was owned and/or operated by one or more of the named defendants. The named defendants in this case — KND Development 51, L.L.C.; Kindred Transitional Care and Rehab — Stratford; Kindred Nursing & Rehab — Stratford; Kindred Healthcare Operating, Inc.; Kindred Healthcare, Inc.; and Amanda Eberhart — can enforce the Agreement as each person or entity qualifies as a "[f]acility, employees, agents, officers, directors, any parent, subsidiary or affiliate of the Facility and/or its medical director." *See Donnell v. Parkcliff Alzheimer Community*, 6th Dist. Wood No. WD-17-001, 2017-Ohio-7982; s*ee also N. Park Retirement Community Ctr., Inc.*, 8th Dist. Cuyahoga No. 96376, 2011-Ohio-5179.

{¶ 19} In addition, the Agreement provides, in pertinent part:

(H) <u>Binding Effect of Agreement.</u>

It is the intention of the parties to this Agreement that it shall inure to the benefit of and bind the parties, their successors and assigns, including the agents, employees, servants, officers, directors,

and any parent, subsidiary or affiliate of the Facility, and all persons whose claim is derived through or on behalf of the Resident, including any parent, spouse, child, guardian, executor, agent administrator, legal representative, or heir of the Resident.

Thus, the Agreement was entered into by Kinder on behalf of its parents, affiliates, and subsidiaries. *Alford v. Arbors at Gallipolis*, 2018-Ohio-4653, 123 N.E.3d 305 (4th Dist.). We find no merit to the argument that because the other defendants did not sign the agreement, it is unenforceable pursuant to R.C. 2711.22(A).

## 2. Void Under Ohio Law

{¶ 20} Roberts next contends that the Agreement was void pursuant to R.C. 2711.23. R.C. 2711.23 governs arbitration agreements provisions required for "controversies involving a medical, dental, chiropractic, or optometric claim that is entered into prior to a patient receiving any care, diagnosis, or treatment" and provides that for an arbitration agreement to be "valid and enforceable" it "shall" include or be subject to a set of certain conditions contained in the statute. Roberts contends that the Agreement violates the following provisions of R.C. 2711.23:

(A) The agreement shall provide that the care, diagnosis, or treatment will be provided whether or not the patient signs the agreement to arbitrate;

* * *

(F) Any arbitration panel shall consist of three persons, no more than one of whom shall be a physician or the representative of a hospital;

(G) The arbitration agreement shall be separate from any other agreement, consent, or document.

**{¶ 21}** Roberts contends that the Agreement is unenforceable because it did not expressly state that "care, diagnosis, or treatment" would be provided whether or not she signed the document and therefore does not comport with R.C. 2711.23(A). We disagree. This requisite is satisfied by Section L of the Agreement, which provided, in part:

> L. <u>Understanding of the Resident</u>. By signing this Agreement, the Resident is acknowledging that he/she understands the following: * * * (2) the execution of this Agreement is not a precondition of admission or to the furnishing of services to the Resident by Facility, and the decision of whether to sign the Agreement is solely a matter for the Resident's determination without any influence; * * *.

**{¶ 22}** Next, Roberts claims that the Agreement is unenforceable because it did not provide that the arbitration panel would consist of three members, no more than one of whom shall be a physician or the representative of a hospital, in contravention of R.C. 2711.23(F).

**{¶ 23}** The Agreement stated provided, in pertinent part:

> D. <u>Process.</u> The parties shall attempt to resolve any dispute arising out of or relating to the Agreement or the Resident's stay at the Facility, by mediation. The mediator and arbitrator will be selected as described in Rule 2.03 of the Rules of Procedure. * * * Any claim or controversy that remains unresolved after the conclusion or termination of the mediation shall be settled by binding arbitration in accordance with the Agreement.

**{¶ 24}** Rule 2.03 of the Kindred Healthcare Alternative Dispute Resolution Rules of Procedure stated that "parties may agree to resolve their dispute before a

panel of three (3) arbitrators or a single arbitrator. The arbitration shall proceed before a single arbitrator unless one or both parties request a panel of arbitrators." While these rules, presumably promulgated under Kentucky law where Kindred is headquartered, do not specifically set forth the language utilized in the Ohio statute, nothing in Rule 2.03 prohibits a panel of three arbitrators. *Alford,* 2018-Ohio-4653, 123 N.E.3d 305, at ¶ 41.

{¶ 25} Pursuant to the plain language of the statute, to be enforceable an arbitration agreement "shall include *or be subject to* the following conditions" (emphasis added) R.C. 2711.23; therefore, there is no requirement that an arbitration agreement mirror the language of the statute. Although the Agreement does not expressly state that the arbitration panel would consist of three members, no more than one of whom shall be a physician or the representative of a hospital, the Agreement also does not prohibit an arbitration panel of such a composition. And, as stated, in order for the Agreement to be enforceable, any panel would have to comport with the R.C. 2711.23.

{¶ 26} In addition, the Agreement contains a severability clause. "A court will not lightly conclude that the invalidity of a particular contract term requires invalidation of the entire agreement." *Alford* at ¶ 42, citing *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-93, 884 N.E.2d 12, at ¶ 63. We find that the language of the Agreement suffices to allow compliance with R.C. 2711.23(F). However, even if it can be said to be insufficient, Section D is severable and does not require invalidation of the entire arbitration agreement.

{¶ 27} Roberts next argues that the Agreement does not comply with R.C. 2711.23(G) because it was not given to her as a document "separate from any other agreement, consent, or document." Upon review, the arbitration agreement appears to be a "stand alone" document attached to the admissions agreements. Although it was one of several attachments, the evidence does not suggest it was anything other than a "stand alone" document.

{¶ 28} Given our above analysis of the R.C. 2711.23 factors, we do not find the arbitration agreement in this case to be void and unenforceable on the basis of failure to comply with the R.C. 2711.23. Therefore, Roberts's argument in this regard is also without merit.

### 3. Substantive and Procedural Unconscionability

{¶ 29} Roberts argues that the Agreement is unconscionable and, therefore, cannot be enforced.

{¶ 30} Unconscionability embodies two separate concepts: (1) unfair and unreasonable contract terms, i.e., substantive unconscionability; and (2) an absence of meaningful choice on the part of one of the parties, i.e., procedural unconscionability. *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 34. A party asserting the unconscionability of a contract "must prove a quantum of both substantive and procedural unconscionability." *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 30; *Taylor Bldg.* at *id.* In other words, these two concepts create a two-prong conjunctive test for unconscionability. *Gates v. Ohio Sav. Assn.*, 11th Dist. Geauga No. 2009-G-

2881, 2009-Ohio-6230, ¶ 47; *Strack v. Pelton*, 70 Ohio St.3d 172, 637 N.E.2d 914 (1994). Again, we review whether an arbitration agreement is enforceable in light of a claim of unconscionability using de novo standard of review. *Hayes* at ¶ 21, citing *Taylor Bldg.* at ¶ 37.

{¶ 31} In determining whether an agreement is procedurally unconscionable, courts consider the relative bargaining positions of the parties including each party's age, education, intelligence, experience, and who drafted the contract. *Taylor Bldg.* at ¶ 44. Additional factors that may contribute to a finding of procedural unconscionability include the following:

> "belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his [or her] interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors."

*Id.*, quoting Restatement of the Law 2d, Contracts (1981), Section 208, Comment d.

{¶ 32} "'A determination of unconscionability is a fact-sensitive question that requires a case-by-case review of the surrounding circumstances.'" *Brunke v. Ohio State Home Servs., Inc.*, 9th Dist. Lorain No. 08CA009320, 2008-Ohio-5394, ¶ 8, quoting *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841 (9th Dist.); *Wallace v. Ganley Auto Group*, 8th Dist. Cuyahoga No. 95081, 2011-Ohio-2909, ¶ 44.

{¶ 33} Thus, though guided by a strong presumption in favor of arbitration, Ohio also recognizes that principles of equity and fairness require that greater scrutiny be given to arbitration provisions that do not involve parties of equal sophistication and bargaining power:

> To be sure, an arbitration clause in a consumer contract with some characteristics of an adhesion contract "necessarily engenders more reservations than an arbitration clause in a different setting," such as a collective-bargaining agreement or a commercial contract between two businesses.

*Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 50.

{¶ 34} Roberts argues that the Agreement was procedurally unconscionable because Roberts was 84 years old at the time of admission; Burks signed the Agreement as Roberts's power of attorney and was under a great deal of stress at the time she signed the contract; there is no evidence that Roberts or Burks were given time to read the lengthy admissions documents before signing; and there is no evidence that anyone with knowledge of arbitration met with Roberts or Burks before Roberts was admitted into the nursing home facility.

{¶ 35} One of the cases Roberts cites in this appeal is *Manley v. Personacare of Ohio*, 11th Dist. Lake No. 2005-L-174, 2007-Ohio-343. In *Manley*, the Eleventh District Court of Appeals found an arbitration agreement signed by a 66-year-old resident upon admission to a nursing home was procedurally unconscionable when the resident entered the nursing home directly from the hospital, did not have anyone present with her upon admission, was college educated but had no legal experience, did not have an attorney with her when she entered into the arbitration

agreement, and had a mild cognitive impairment. The *Manley* court noted the following:

> The fact that a resident is signing an arbitration agreement contemporaneously with being admitted into a nursing home is troubling. By definition, an individual being admitted into a nursing home has a physical or mental detriment that requires them to need the assistance of a nursing home. Further, the reality is that, for many individuals, their admission to a nursing home is the final step in the road of life. As such, this is an extremely stressful time for elderly persons of diminished health. In most circumstances, it will be difficult to conclude that such an individual has equal bargaining power with a corporation that, through corporate counsel, drafted the form contract at issue.
>
> In the case at bar, Patricia Manley was 66 years old, entering a nursing home directly from a hospital, without an attorney, friend, or family member to assist her in the process. She had fears due to a recent assault, had no legal expertise, had numerous physical problems, had a mild cognitive impairment, and had bouts of confusion. In light of these factors, we conclude her bargaining power was substantially outweighed by the relative bargaining power of Personacare.

*Manley* at ¶ 29-30.

{¶ 36} Upon review, we find *Manley* to be distinguishable. Although Roberts, at 84, was significantly older than the resident in *Manley*, Roberts's daughter was with her when she was admitted and executed the Agreement as Roberts's legal representative. While we agree with the *Manley* court that a resident signing an arbitration agreement contemporaneously with being admitted into a nursing home may be troubling and do not doubt the stress Burks may have felt placing her mother in a nursing home, that alone is not enough to establish procedural unconscionability.

{¶ 37} Further, while Roberts claims that there was no evidence that she and Burks were given sufficient time to review the documents or that anyone with knowledge of arbitration explained the concept to them, at this juncture, there is also no evidence that the admission procedure was rushed or truncated or that the documents were not adequately explained.

{¶ 38} Thus, under the totality of the circumstances of this case, the arbitration provision is not procedurally unconscionable. Because Roberts bore the burden of proving that the arbitration agreement was both procedurally and substantively unconscionable and we have found that the Agreement was not procedurally unconscionable, we need not consider whether it was also substantively unconscionable.

### 4. Waiver

{¶ 39} Finally, Roberts argues that Kindred waived its right to arbitrate the matter. Whether a party has waived the right to arbitrate a dispute is a mixed question of law and fact. *Gembarski v. PartsSource, Inc.*, 157 Ohio St.3d 255, 2019-Ohio-3231, 134 N.E.3d 1175, ¶ 26 ("This court reviews de novo the legal question whether PartsSource's conduct amounts to a waiver of the argument, but we review the factual findings underlying the trial court's determination only for clear error.").

{¶ 40} Arbitration is a matter of contract and can be enforced unless explicitly or implicitly waived. *Bass Energy, Inc. v. Highland Hts.*, 193 Ohio App.3d 725, 2010-Ohio-2102, 954 N.E.2d 130, ¶ 33 (8th Dist.). Implicit waiver occurs when a party fails to assert its rights or participates in the litigation "to such an extent that

its actions are 'completely inconsistent with any reliance' on this right, resulting in prejudice to the opposing party." *Id.*, quoting *General Star Natl. Ins. Co. v. Adminstratia Asigurarilor De Stat*, 289 F.3d 434, 438 (6th Cir.2002), and *Gordon v. OM Fin. Life Ins. Co.*, 10th Dist. Franklin No. 08AP-480, 2009-Ohio-814.

{¶ 41} We are mindful, however, that there is a strong public policy that favors arbitration of disputes; therefore, we do not lightly infer that a party who has initiated litigation on a matter has waived the right to arbitration. *Harsco Corp. v. Crane Carrier Co.*, 122 Ohio App.3d 406, 414, 701 N.E.2d 1040 (3d Dist.1997). The party contending that waiver occurred has a "heavy burden" of demonstrating that the party requesting arbitration acted inconsistently with the right to arbitrate. *U.S. Bank v. Wilkens*, 8th Dist. Cuyahoga No. 93088, 2010-Ohio-262, ¶ 32.

{¶ 42} Some of the factors that courts consider in determining whether the totality of the circumstances supports a finding of waiver include the following:

> (1) whether the party seeking arbitration invoked the jurisdiction of the trial court by filing a complaint, counterclaim or third-party complaint without asking for a stay of proceedings; (2) the delay, if any, by the party seeking arbitration in requesting a stay of proceedings or an order compelling arbitration; (3) the extent to which the party seeking arbitration participated in the litigation, including the status of discovery, dispositive motions and the trial date; and (4) any prejudice to the nonmoving party due to the moving party's prior inconsistent actions.

*Academic Support Servs., L.L.C. v. Cleveland Metro. School Dist.*, 8th Dist. Cuyahoga No. 99054, 2013-Ohio-1458, ¶ 8.

{¶ 43} Roberts contends that Kindred waived its right to arbitrate the case because Kindred moved the court to enforce Civ.R. 10, sought a protective order,

waited six months after Roberts filed her complaint to file its motion to stay, and asked for a jury trial. These actions, Roberts argues, evidence a desire to litigate instead of arbitrating the case.

{¶ 44} We disagree with Roberts's contention; Kindred did not waive their right to arbitration through its participation in the case. We find *Milling Away, L.L.C. v. Infinity Retail Environments, Inc.*, 9th Dist. Summit No. 24168, 2008-Ohio-4691, persuasive. In *Milling Away*, the court found that the waiver doctrine did not apply when the party seeking arbitration waited six months after the complaint was filed to move for a stay. The court considered that even though the party seeking arbitration had filed a counterclaim, the parties had not conducted extensive discovery and no trial date had been set. *Id.* at ¶ 14.

{¶ 45} Here, although Kindred did not file its motion for stay until six months after Roberts filed her complaint, the parties had not conducted extensive discovery and no trial date had been set. Rather a majority of the delay appears to involve attempted mediation and limited discovery ordered by the trial court. Kindred did not file a counterclaim or third-party complaint in the suit. Although we recognize that any delay in the proceedings may cause prejudice to the non-moving party, Roberts has not shown undue prejudice. Under the totality of the circumstances, arbitration was not waived.

{¶ 46} For the foregoing reasons, Roberts's sole assignment of error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____

MICHELLE J. SHEEHAN, JUDGE

PATRICIA ANN BLACKMON, P.J., and
RAYMOND C. HEADEN, J., CONCUR