[Cite as *Murman v. WP Operating*, 2026-Ohio-2080.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MICHAEL E. MURMAN,                    :
ADMINISTRATOR OF THE ESTATE
OF ANTOINE I. RICHARD,                :

     Plaintiff-Appellee,          :

                          No. 115456

     v.                           :

WP OPERATING DBA HARVARD              :
GARDENS REHABILITATION AND
CARE CENTER, ET AL.,                  :

     Defendants-Appellants.       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** June 4, 2026

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-24-109060

---

### *Appearances:*

The Mellino Law Firm, LLC, Christopher M. Mellino, and Calder C. Mellino, *for appellee.*

Marshall Dennehey, P.C., and Leslie M. Jenny, *for appellants.*

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendants-appellants WP Operating d.b.a. Harvard Gardens Rehabilitation and Care Center, Jameesha Willis, Charlene Duckworth, Crystal

Sullivan, Lombrisha Reed, and Sharon Simpkins (the "Harvard Gardens Defendants") appeal the trial court's denial of their joint motion to stay and enforce arbitration agreement. Plaintiff-appellee Michael E. Murman, administrator of the estate of Antoine I. Richard ("Richard's Estate"), opposed the motion, arguing below that the arbitration agreement at issue was unenforceable because it was not signed by the parties, did not satisfy the legal requirements of R.C. 2711.23, and was unconscionable. The trial court agreed with Richard's Estate and found that the arbitration agreement was unconscionable and did not comply with R.C. 2711.23. Therefore, the arbitration agreement was unenforceable. The Harvard Gardens Defendants appeal this decision, raising the following assignment of error:

> The trial court erred and abused its discretion by not staying the entire matter pending complete arbitration of all arbitrable claims as required by O.R.C. 2711.

{¶ 2} Based on our independent review of the record and applicable law, we affirm the trial court's decision, albeit on slightly different grounds. Specifically, we find the subject arbitration agreement unenforceable because it does not comply with the requirements of R.C. 2711.23. The record demonstrates that the parties' admissions agreement ("Admissions Agreement"), and the singular arbitration provision contained therein, fails to satisfy the requirements outlined in the statute. Thus, the arbitration agreement is not a valid and enforceable agreement. And, consequently, because unconscionability is only a ground for the revocation of a valid arbitration agreement, we do not need to address the issue of unconscionability. Harvard Gardens Defendants' sole assignment of error is

overruled.  The judgment below is affirmed, and this matter is remanded for further proceedings consistent with this opinion.

**Statement of Facts**

**Substantive Facts**

**{¶ 3}**  On June 19, 2023, Antoine Richard ("Richard"), then 19 years old, was admitted to the Harvard Gardens Rehabilitation and Care Center directly from the hospital.  Richard required skilled-nursing services because he suffered from paraplegia and other serious medical conditions.  Concurrent with his admission, the Admissions Agreement was allegedly executed by the parties.[1]  The 13 page Admissions Agreement contained the following arbitration provision:

Section 9 Miscellaneous

G. <u>Disputes</u>.  Any controversy, dispute or disagreement arising out of or in connection with this Agreement, the breach thereof, or the subject matter thereof, including Facility's obligation thereof, shall be settled by binding arbitration, which shall be conducted in Jersey City, New Jersey in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration, and which is to the extent of the subject matter of the arbitration shall be binding not only on all the parties to this Agreement, but on any other entity controlled by, in control of or under common control with the party to the extent that such affiliates joins in the arbitration, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

**{¶ 4}**  In December 2023, Richard had repeated episodes of vomiting and a change in mental status.  At some point in time, EMS was called and, while

---

[1] As noted by the trial court, the Admissions Agreement contains one illegible and unidentified signature on the line for "resident."  There is no signature by any individual representing the Harvard Gardens Defendants.

paramedics were assessing Richard, he suffered a cardiac arrest. He was taken to the hospital where he died on December 22, 2023.

**Procedural Facts**

**{¶ 5}** On December 18, 2024, Richard's Estate filed the instant lawsuit against the Harvard Gardens Defendants and several other parties involved in Richard's medical care at the time of his death. The complaint generally alleges claims sounding in negligence, wrongful death, and pain and suffering. On March 28, 2025, the Harvard Gardens Defendants filed a joint motion to stay and enforce arbitration agreement based on the singular provision contained in the Admissions Agreement. At the time of filing this motion, the Harvard Gardens Defendants requested a hearing.

**{¶ 6}** Richard's Estate opposed the motion to stay and enforce arbitration agreement asserting that the subject arbitration agreement was unenforceable because it was not signed by the parties, did not comply with the requirements of R.C. 2711.23, and was unconscionable. In turn, the Harvard Garden Defendants argued that the arbitration agreement was signed by Richard, complied with the requirements of R.C. 2711.23, and was conscionable. The trial court set a date for a hearing on the Harvard Gardens Defendants' motion. However, prior to the hearing, the Harvard Gardens Defendants withdrew their request for a hearing and stated that the trial court could render a decision solely based on the parties' briefs and the Admissions Agreement.

**{¶ 7}** On July 22, 2025, the trial court denied the Harvard Gardens Defendants' motion to stay and enforce arbitration agreement. The trial court determined that the arbitration agreement was unconscionable and failed to comply with R.C. 2711.23. This appeal follows.

## Applicable Law

### Standard of Review

**{¶ 8}** "Our review of decisions to compel arbitration depends on "'the type of questions raised challenging the applicability of the arbitration provision.""" *Fifth Third Bank v. Senvisky*, 2014-Ohio-1233, ¶ 10 (8th Dist.), quoting *Skerlec v. Ganley Chevrolet, Inc.*, 2012-Ohio-5748, ¶ 6 (8th Dist.), quoting *McCaskey v. Sanford-Brown College*, 2012-Ohio-1543, ¶ 7 (8th Dist.). Issues involving an appellate court's review of a trial court's interpretation and application of a statute is de novo. *Jones v. N&S Auto Sales, Inc.*, 2013-Ohio-2468, ¶ 13 (8th Dist.), quoting *Siegfried v. Farmers Ins. of Columbus, Inc.*, 2010-Ohio-1173, ¶ 11 (9th Dist.). Additionally, "when a trial court's decision granting or denying a motion to compel arbitration or a motion to stay involves issues of contractual interpretation, the standard of review is de novo." *Ellis v. Setjo, L.L.C.*, 2025-Ohio-4844, ¶ 14 (8th Dist.), citing *Cuyahoga Supply and Tool, Inc. v. BECDIR Constr. Co.*, 2024-Ohio-1375, ¶ 8 (8th Dist.). Because our review of the trial court's decision to deny the motion to enforce arbitration involves interpretation and application of the requirements of R.C. 2711.23 to the subject arbitration agreement, we will conduct a de novo review.

**Arbitration**

{¶ 9} It is well recognized by Ohio courts that there exists "'a presumption favoring arbitration' that arises 'when the claim in dispute falls within the scope of the arbitration provision.'" *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 27, quoting *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1988); *see also Hayes v. Oakridge Home*, 2009-Ohio-2054, ¶ 15 (stating "both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration"). Indeed, "Ohio law directs trial courts to grant a stay of litigation in favor of arbitration pursuant to a written arbitration agreement on application of one of the parties, in accordance with R.C. 2711.02(B)." *Taylor Bldg. Corp. of Am.* at ¶ 28. "Arbitration agreements are 'valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.'" *Id.* at ¶ 33, quoting R.C. 2711.01(A). "The party seeking to compel arbitration bears the burden of establishing the existence of an enforceable arbitration agreement between the party against whom the moving party seeks enforcement." *Senvisky* at ¶ 11. Unconscionability is a ground for the revocation of an arbitration agreement. *See generally Hayes* at ¶ 19.

**Arbitration and Medical Claims**

{¶ 10} R.C. Ch. 2711 sets forth the legal requirements applicable to arbitration agreements in Ohio. While R.C. 2711.01-2711.20 set forth the general requirements applicable to all arbitration proceedings, R.C. 2711.21 – 2711.24 establish additional requirements regarding the arbitration of matters involving

"medical claims" as defined by R.C. 2305.113(E)(3) and "arising out of the diagnosis, treatment, or care of the patient . . . ." R.C. 2711.22 and 2711.23. Specifically, R.C. 2711.23 provides:

> *To be valid and enforceable **any** arbitration agreements pursuant to sections 2711.01 and 2711.22 of the Revised Code for controversies involving a medical, dental, chiropractic, or optometric claim that is entered into prior to a patient receiving any care, diagnosis, or treatment **shall** include or be subject to the following conditions:*
>
> (A) The agreement shall provide that the care, diagnosis, or treatment will be provided whether or not the patient signs the agreement to arbitrate;
>
> (B) The agreement shall provide that the patient, or the patient's spouse, or the personal representative of the patient's estate in the event of the patient's death or incapacity, shall have a right to withdraw the patient's consent to arbitrate the patient's claim by notifying the healthcare provider or hospital in writing within thirty days after the patient's signing of the agreement. Nothing in this division shall be construed to mean that the spouse of a competent patient can withdraw over the objection of the patient the consent of the patient to arbitrate;
>
> (C) The agreement shall provide that the decision whether or not to sign the agreement is solely a matter for the patient's determination without any influence;
>
> (D) The agreement shall, if appropriate, provide that its terms constitute a waiver of any right to a trial in court, or a waiver of any right to a trial by jury;
>
> (E) The agreement shall provide that the arbitration expenses shall be divided equally between the parties to the agreement;
>
> (F) Any arbitration panel shall consist of three persons, no more than one of whom shall be a physician or the representative of a hospital;
>
> (G) The arbitration agreement shall be separate from any other agreement, consent, or document;

(H) The agreement shall not be submitted to a patient for approval when the patient's condition prevents the patient from making a rational decision whether or not to agree;

(I) Filing of a medical, dental, chiropractic, or optometric claim within the thirty days provided for withdrawal of a patient from the arbitration agreement shall be deemed a withdrawal from the agreement;

(J) The agreement shall contain a separately stated notice that clearly informs the patient of the patient's rights under division (B) of this section.

(Emphasis added.)

**Statutory Interpretation**

{¶ 11} "When interpreting a statute, "'the court must first look to the plain language of the statute itself to determine legislative intent.'"" *Ullman v. Columbus*, 2024-Ohio-5223, ¶ 27 (10th Dist.), quoting *State ex rel. Peregrine Health Servs. of Columbus, L.L.C. v. Sears*, 2020-Ohio-3426, ¶ 29 (10th Dist.), quoting *State v. Bundy*, 2012-Ohio-3934, ¶ 46 (4th Dist.). "'When a statute's meaning is clear and unambiguous, we apply the statute as written.'" *Id.,* quoting *State v. Gonzales*, 2017-Ohio-777, ¶ 4. "'When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said.'" *State v. Mallory*, 2022-Ohio-3667, ¶ 36 (8th Dist.), quoting *Jones v. Action Coupling & Equip., Inc.,* 2003-Ohio-1099, ¶ 32. "When engaging in statutory interpretation, courts will give the words in a statute their plain and ordinary meaning absent a contrary legislative intent." *State v. Conyers*, 87 Ohio St.3d 246, 249-250 (1999), citing *Coventry Towers, Inc. v.*

*Strongsville*, 18 Ohio St.3d 120, 122 (1985). "We give meaning to each word, neither adding nor removing words from the statute." *State v. Erskine*, 2015-Ohio-710, ¶ 26; *see also State v. Smith*, 2022-Ohio-274, ¶ 36 (Interpretation must give effect to every word and clause in the statute.). In interpreting a statute, "[t]he term '[a]ny' is often used as meaning 'all.'" *State ex rel. Ames v. Geauga Cty. Bd. of Revision*, 2022-Ohio-2281, ¶ 34 (11th Dist.), quoting *Wachendorf v. Shaver*, 149 Ohio St. 231, 240 (1948). Also, "[i]n interpreting a statute, we have held that 'the word "shall" is mandatory.'" *In re D.R.B.*, 2015-Ohio-3346, ¶ 17 (8th Dist.), quoting *San Allen v. Buehrer,* 2014-Ohio-2071, ¶ 81 (8th Dist.).

**Analysis**

{¶ 12}  In this case, the parties and the trial court below primarily focused on the unconscionability of the arbitration agreement. However, unconscionability is a ground for the revocation of a valid arbitration agreement. *Hayes*, 2009-Ohio-2054, ¶ 19. Thus, before we can reach the issue of unconscionability, we must first determine whether there exists a valid and enforceable arbitration agreement. *See generally Roberts v. KND Dev. 51, L.L.C.*, 2020-Ohio-4986, ¶ 11 (8th Dist.), quoting *Reedy v. The Cincinnati Bengals, Inc.*, 143 Ohio App.3d 516, 520 (1st Dist. 2001) ("'When a party requests a stay under R.C. 2711.02, the first issue before the trial court is whether there is a valid written agreement to arbitrate.'").

{¶ 13} Below, Richard's Estate argued, among other things, that the arbitration agreement was unenforceable because it did not comply with the

requirements set forth in R.C. 2711.23. After our de novo review of R.C. 2711.23 and the parties' arbitration agreement, we agree that the subject arbitration agreement is unenforceable because it does not comply with this statute. We find that the language of R.C. 2711.23 is clear and unambiguous as well as conveys a clear and definite meaning. Specifically, R.C. 2711.23 provides that to be valid and enforceable, all arbitration agreements under R.C. 2711.01 and 2711.22 arising from medical claims "shall include or be subject to" the conditions outlined in subsections (A)-(J).

{¶ 14} Further, our de novo review of the subject Admissions Agreement and the singular arbitration provision contained within demonstrates that this agreement fails to satisfy the requirements of R.C. 2711.23. Subsections (A)-(E) and (J) expressly state that the "agreement shall provide" or "shall contain" before identifying the specific condition. We interpret the plain and ordinary meaning of this phrase and in particular the use of the word "shall" to mean that it is mandatory that the arbitration agreement expressly state these conditions *within* the contract.

{¶ 15} For example, subsection (A) requires that "the agreement shall provide that the care, diagnosis, or treatment will be provided whether or not the patient signs the agreement to arbitrate." Here, the subject arbitration agreement does not contain this mandatory language. Subsection (B) generally provides that the "agreement shall provide" the patient with the right to withdraw from the arbitration agreement. This language is absent from the subject arbitration agreement. Subsection (C) sets forth that the "agreement shall provide that the

decision whether or not to sign the agreement is solely a matter for the patient's determination without any influence." Again, this language is absent from the subject arbitration agreement. Further comparison of the statute with the subject arbitration agreement reveals that the agreement fails to satisfy subsections (D) and (E) as well.

{¶ 16} Additionally, subsection (G) requires that the arbitration agreement be "separate from any other agreement, consent, or document." The arbitration agreement in this matter is a singular provision contained within the 13-page Admissions Agreement. Thus, the arbitration agreement fails to comply with R.C. 2711.23(G). *Compare Estate of Ryan v. Brookdale Zanesville*, 2026-Ohio-411, ¶ 30 (5th Dist.) (arbitration provision included in 18-page residency agreement does not comply with R.C. 2711.23(G)) *with Roberts*, 2020-Ohio-4986, at ¶ 28 (8th Dist.) (arbitration agreement as a stand-alone document satisfying R.C. 2711.23(G)) and *Alford v. Arbors of Gallipolis*, 2018-Ohio-4653, ¶ 43 (4th Dist.) (arbitration agreement as a six-page stand-alone document satisfies R.C. 2711.23(G)).

{¶ 17} We are also unpersuaded by the Harvard Gardens Defendants' arguments asserting that the arbitration agreement complies with R.C. 2711.23. In their briefing, the Harvard Gardens Defendants focus on the "subject to" language of the statute to simply argue that the arbitration agreement is "subject to" each of the conditions and thus valid. In short, they argue the arbitration agreement does not need to expressly state any of these requirements. Rather, in their trial court

briefing, they argued that the mere absence of a provision denying the patient the rights afforded under R.C. 2711.23 demonstrated "subject to" compliance.

{¶ 18} However, we find that this interpretation is not supported by the language of the statute and the caselaw. As set forth above, the statute provides that any arbitration agreement "shall include or be subject to the following conditions . . . ." Our review and interpretation of the language chosen by the General Assembly as it lists the required conditions illustrates the clear meaning of the words "shall include or be subject to." *See Estate of Ryan* at ¶ 33-34.

{¶ 19} Specifically, as set forth above, subsections (A)-(E) and (J) are the conditions that fall under the "shall include" language as each condition expressly states that the agreement "shall include." "The word 'include' means 'to contain between or within.'" *Id*. at ¶ 33, quoting *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/include (accessed Jan. 15, 2026) [https://perma.cc/HDE9-BS27]. On the other hand, subsections (F)-(I) illustrate the conditions of an arbitration agreement that fall under the "subject to" language. "The phrase 'subject to' is defined as 'conditional or dependent on something.'" *Id*., quoting *The Law Dictionary*, https://thelawdictionary.org/subject-to (accessed Jan. 15, 2026) [https://perma.cc/SN8K-P7VX]. For example, subsection (H) provides that "the agreement shall not be submitted to a patient for approval when the patient's condition prevents the patient from making a rational decision whether or not to agree." This is a condition that must be satisfied by the provider to create an enforceable arbitration agreement. Another example is subsection (F) that

generally states that any arbitration panel shall consist of three persons. Again, this subsection does not include language indicating that the agreement must affirmatively state this requirement. Thus, the arbitration agreement is "subject to" this condition. *See Roberts*, 2020-Ohio-4986, at ¶ 22-25 (8th Dist.) (This court clarifies the meaning of "subject to" when addressing subsection (F) finding it satisfied because the agreement provides that it is "subject to" — or dependent on — the Kindred Healthcare Alternative Dispute Resolution Rules of Procedure that provides that any arbitration panel shall consist of three persons. Consequently, the court concluded that the arbitration agreement did not need to "mirror" the language of the statute.).

{¶ 20} The Harvard Gardens Defendants also blur the distinction between compliance with the statute and substantive unconscionability. Lack of compliance with R.C. 2711.23 and unconscionability are separate and distinct grounds for a denial of a motion to enforce an arbitration agreement. *See, e.g., Roberts*; *Alford*, 2018-Ohio-4653 (4th Dist.) (each addressing compliance (or lack thereof) with R.C. 2711.23 separately from unconscionability). Admittedly, some existing caselaw blurs this distinction because courts sometimes refer to the conditions outlined in R.C. 2711.23 as guidance when addressing whether an arbitration agreement is substantively unconscionable. *See, e.g., Pearson v. ManorCare Health Servs.*, 2015-Ohio-5460, ¶ 44 (11th Dist.); *Martin v. Manorcare Health Servs., LLC,* 2024-Ohio-2250, ¶ 22-26 (9th Dist.). However, the language "no bright line" relied on by the Harvard Gardens Defendants to show compliance with the statute originates

from a discussion regarding substantive unconscionability from the Ohio Supreme Court decision in *Hayes,* 2009-Ohio-2054. The full quote from *Hayes* is "no bright-line set of factors for determining substantive unconscionability has been adopted by this court." *Id.* at ¶ 33. Contrary to the Harvard Gardens Defendants' assertions otherwise, this "bright-line" analysis is not the "test" for an arbitration agreement's compliance (or lack of) with R.C. 2711.23. The plain language of R.C. 2711.23 demonstrates that the conditions set forth in the statute must be satisfied. *Accord Estate of Ryan*, 2026-Ohio-411, at ¶ 34 (5th Dist.). Their arguments here are not well-taken.

**{¶ 21}** Last, we address the Harvard Gardens Defendants contention that R.C. 2711.23 does not apply to this matter. Preliminarily, we note that in their initial motion to stay this case before the trial court, the Harvard Gardens Defendants proactively argued that arbitration was appropriate because the subject agreement satisfied the requirements of R.C. 2711.23. The Harvard Gardens Defendants continued to argue compliance with R.C. 2711.23 throughout the entirety of their trial court and appellate briefing of this matter. Only at oral argument and in their subsequent supplemental brief wherein we requested interpretation and application of a separate statute to this matter did the Harvard Gardens Defendants argue that R.C. 2711.23 did not apply to this matter.[2]

---

[2] The court requested the parties to submit supplemental briefing on the potential applicability of R.C. 2711.22(A) to the facts of this case.

{¶ 22} While we may properly disregard this argument raised for the first time on appeal, we are inclined to address it. The Harvard Gardens Defendants rely on the language of R.C. 2711.22 to support their contention that R.C. 2711.23 does not apply to this matter. Both statutes apply to medical claims as defined by R.C. 2305.113. R.C. 2711.22(A) generally provides that a written arbitration agreement between a patient and "a hospital or healthcare provider" entered into prior to a diagnosis, treatment or care of the patient is valid and enforceable. The Harvard Gardens Defendants point to R.C. 2711.22's inclusion of "a hospital or healthcare provider" as a party to the agreement to argue that both this statute and R.C. 2711.23 are inapplicable to them as they are not a hospital or healthcare provider as defined by R.C. 2711.22(B).

{¶ 23} However, while R.C. 2711.22(A) expressly limits its application to agreements between a patient and a hospital or healthcare provider arising from medical claims, this same limiting language is not present in R.C. 2711.23. Moreover, not only is this limiting language absent from R.C. 2711.23, but the express language of R.C. 2711.23 provides that it applies to any arbitration agreements under either R.C. 2711.01 or 2711.22. The use of the word "any" means "all" as interpreted by the Ohio Supreme Court. *Wachendorf,* 149 Ohio St. at 240. Thus, we interpret this language to mean that the General Assembly intended that all arbitration agreements arising from medical claims — whether under R.C. 2711.01 (arbitration agreements in general) or 2711.22 (arbitration agreements

between patients and hospitals or healthcare providers) must comply with the requirements of R.C. 2711.23.

{¶ 24} Additionally, we are unpersuaded by the Harvard Gardens Defendants' reliance on *Donnell v. Parkcliffe Alzheimer's Community*, 2017-Ohio-7982 (6th Dist.), for the proposition that R.C. 2711.23 only applies to hospitals or health care providers. *Donnell* was instituted by the estate of a resident of an adult group home. *Id.* at ¶ 1-2. The *Donnell* Court expressly discussed the difference between a group home and a nursing home, and, specifically, that a group home does not provide any medical care. *Id.* at ¶ 15-16. ("Appellees stressed that Mrs. Donnell did not reside in a nursing home nor did they provide health care to Mrs. Donnell . . . .") This distinction was also critical to the decision in *Donnell* to ascertain whether the appellant had the authority to sign the Admission Agreement that contained the arbitration clause on Donnell's behalf. Thus, unlike here, no "medical claims" were involved in *Donnell*. The *Donnell* Court further held that R.C. 2711.23 did not apply to defendants because, as a group home, they were not a hospital or healthcare provider as defined by R.C. 2711.22. *Id.* at ¶ 27. Thus, the *Donnell* Court concluded R.C. 2711.23 did not apply to the defendants.

{¶ 25} This conclusion, however, fails to address the significance of the General Assembly's express inclusion of R.C. 2711.01 in R.C. 2711.23. As we set forth above, the clear and unambiguous language of R.C. 2711.23 provides that its requirements apply to "all arbitration agreements" under R.C. 2711.01 and 2711.22 involving medical claims. In contrast, the *Donnell* Court provides no discussion

regarding the requirements for arbitrating medical claims outlined in R.C. 2711.23 to arbitration claims brought under R.C. 2711.01. The *Donnell* Court's discussion is limited to R.C. 2711.22. For these reasons and based on our above set forth analysis, we find *Donnell* is distinguishable. We also note that the following authority addressing R.C. 2711.23 apply the statute to "nursing homes" without question. *See generally Estate of Ryan,* 2026-Ohio-411 (5th Dist.); *Alford*, 2018-Ohio-4653 (4th Dist.); *Roberts,* 2020-Ohio-4986 (8th Dist.); *Scharf v. Manor Care of Willoughby, OH, L.L.C.*, 2020-Ohio-1322 (11th Dist.); *see also Martin v. Manorcare Health Servs. L.L.C.,* 2024-Ohio-2250, 25 (9th Dist.).[3]

**{¶ 26}** Based on all the above, we find that the Harvard Gardens Defendants failed their burden to demonstrate the existence of a valid and enforceable arbitration agreement between the parties and, consequently, the trial court did not err in denying their joint motion to stay and enforce arbitration agreement. The arbitration agreement at issue does not satisfy the requirements of R.C. 2711.23. Because there is no enforceable agreement to be revoked, we do not reach a determination as to whether the agreement was unconscionable. The Harvard

---

[3] This court also notes that the Harvard Gardens Defendants reference to *Alford* in their supplemental brief, is misplaced. After discussing *Donnell* for the proposition that R.C. 2711.23 does not apply to this case, the Harvard Gardens Defendants state that *Donnell* "was later examined by *Alford*" implicitly suggesting that the *Alford* court agreed with this conclusion. However, in contrast, *Alford* applied R.C. 2711.23 to a nursing home and its discussion regarding *Donnell* was limited to a discussion of whether all the necessary parties signed the arbitration agreement. *Alford* at ¶ 21-25. Notably, the *Alford* Court applied both R.C. 2711.22 and 2711.23 to the subject nursing home.

Gardens Defendants' sole assignment of error is overruled, the judgment below is affirmed, and this matter is remanded for further proceedings.

**{¶ 27}** Judgment affirmed, and case remanded.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
DEENA R. CALABRESE, J., CONCUR